M. Jeffery Kallis SBN 190028
The Law Firm of *Kallis* & Associates, P.C.

333 W. San Carlos, Suite 600
San Jose CA 95110
408-971-4655
408-971-4644  fax
M_J_Kallis@Kallislaw.org

Steven M. Berki, Esq.  SBN 245426
**BUSTAMANTE & GAGLIASSO P.C.**
River Park Tower
333 W. San Carlos St., 6th Floor
San Jose, California  95110
Telephone: (408) 977-1911
Sberki@boglawyers.com

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **MOHAMMAD BADAR NAVEED**, et. al., | Case No. 5:15-cv-05298 PSG |
| Plaintiff(s), | |
| vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| **CITY OF SAN JOSE**, et. al., | |
| Defendant(s). | |
| | Complaint Filed: July 10, 2015 |

### Nature of Action

1.    This action is brought to redress unlawful violation of the Plaintiffs' civil rights for false arrest, warrantless search and seizure, excess force, and violation of freedom of speech as protected by 42 U.S.C § 1983 et. seq., the United States and California Constitutions and under California Civil Code §§ 51 & 52.1 et. seq., and for associated state tort actions arising from a common set of operative facts.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Jurisdiction and Venue

2.    The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331, 1367, 1343, and 1367.

3.    This Court has jurisdiction over this action as this is a matter dealing with California Civil Codes, California Constitutional Provisions, and each of the individuals and/or entities listed as defendants reside, work, and/or can be found within Santa Clara County, California. The jurisdiction of this Court if predicated upon the fact that this Court has an interest in ensuring the rights of its citizens are protected and the events and rights involved in this action involve the application of state law, including, but not limited to California Civil Code 51 and 52, et seq. and common law torts.

4.    Venue and jurisdiction is proper in this Court and in this district in that the events and conduct alleged in this complaint occurred in this County and involved parties who reside or work in Santa Clara County.   The proper venue for this action is the Federal District Court for the Northern District of California, San Jose Division.

## Parties

5.    Plaintiff **Mohammad Badar Naveed** is an individual, and was at all times relevant to this action, residing within the City of Woodland, County of Yolo, State of California and a citizen of the United States.

6.    Plaintiff **Humza Ahmad** is an individual, and was at all times relevant to this action, residing within the City of Sacramento, County of Sacramento, State of California and a citizen of the United States.

7.    Defendant **City of San Jose** is an incorporated municipal entity in Santa Clara County, State of California, and with numerous divisions including Defendant **San Jose Police Department** which is a department of the City of San Jose practicing law enforcement and public safety.

8.    Defendant **Officer Jonathan Koenig** (4208) is and was, at all-time relevant to this action, an employee of the City of San Jose, working as a police officer acting under color of authority for the San Jose Police Department.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9.    Defendant **Officer Edgar Nava** (4204) is and was, at all-times relevant to this action, an employee of the City of San Jose, working as a police officer acting under color of authority for the San Jose Police Department.

10.    Defendant **Officer Elizabeth Ornelas** (4201) is and was, at all-time relevant to this action, an employee of the City of San Jose, working as a police officer acting under color of authority for the San Jose Police Department.

11.    Defendant **Officer Martin Wallace** (3922) is and was, at all-time relevant to this action, an employee of the City of San Jose, working as a police officer acting under color of authority for the San Jose Police Department.

12.    Defendant **Sgt. Doug Tran** (3269) is and was, at all-time relevant to this action, an employee of the City of San Jose, working as a police officer acting under color of authority for the San Jose Police Department.

13.    Plaintiffs do not know the true names and or capacities of Defendants not named in this complaint. Plaintiff will amend this complaint to state the true names and capacities of these fictitiously named Defendants when, and if, they are ascertained.

14.    Plaintiff is informed and believes and thereon alleges that these fictitiously named individuals are legally responsible in some manner for the acts and omissions set forth below and therefore are liable to Plaintiff for the relief requested.

15.    At all times relevant and mentioned herein, unless otherwise stated, each Defendant was the agent and/or employer of every other Defendant, and in doing the things, acts and omissions alleged below, was acting within the scope and authority of its agency and/or employment.   All actions of each Defendant alleged herein were ratified and approved by the officers, supervisors managing agents of each of the other Defendants.

### *General Allegations Common To All Claims*

16.    All actions complained of or alleged herein occurred in the City of San Jose, County of Santa Clara, State of California.

17.     Plaintiffs Mohammed Badar Naveed and Humza Ahmad filed tort claims with the City of San Jose as required on 1/10/2014, within the six months mandated by Gov. Code § 911.2.

18.     The City of San Jose rejected these claims on 02/28/2014.

19.     The filing deadline for a civil case was stayed (Cal. Gov. Code § 945.3) pending the prosecution of criminal charges against the Plaintiffs.  Said prosecution was dismissed by the People and was set to be dismissed on August 28, 2015.

20.     This complaint was then timely filed within 6 months of the resolution of the criminal charges, and shortly following dismissal of the charges.

21.     The detention, arrest and search of the Plaintiffs, and their place of business occurred at 1663 Alum Rock Ave., San Jose California on July 12, 2013 and July 13, 2013 at 1663 Alum Rock Ave., San Jose, California.

22.     Defendants Koenig, Nava, Wallace, and Ornelas were all present and participated in the detention, arrest and search/seizure of the Plaintiffs and their property. Defendant Tran participated following the initial detention, arrest and search/seizure of the Plaintiffs and their property.  The named Defendants searched West Coast Wheels (hereinafter "WCW"), Plaintiffs' business, without a warrant and seized property from WCW without a warrant or exception to the warrant requirement. Furthermore, these same Defendants took property without any legal justification and deprived the Plaintiffs of the use and benefit of that property.

23.     At no time between the incident and the dismissal of charges by the Court did the Defendants have a search warrant or an arrest warrant, nor did they seek an arrest warrant or search warrant.

24.     At the time of the arrest of the Plaintiffs, Defendants Koenig, Nava, Wallace, Tran and Ornelas seized the Plaintiffs' cell phones and have since refused to return them despite numerous requests.[1] This seizure was made without a warrant.

---

[1]  Plaintiffs' had all of their customer and supplier contacts on their cell phones. Thus, the loss of their phones was tantamount to putting them out of business a substantial period. This information was transmitted to and defendants refused to release the phones and in fact, as will be set forth in this complaint,

*Specific Factual Allegations Regarding the Incident*

25.  Plaintiffs own, operate, and/or are employed with WCW, located in San Jose and Redwood City, selling custom wheels and other automotive specialty items.

26.  WCW is a family business. Plaintiffs are family members and each have a real interest in the business.  Plaintiffs are all practitioners of the Muslim faith and had been fasting as is required during the holy days of Ramadan when the incidents subject of this complaint occurred. This incident occurred during Ramadan.

27.  In July of 2013, Plaintiffs received an internet request for a quote for four (4) twenty-two (22) inch rims from Va Phong (hereinafter "Phong").  On information and belief Plaintiffs allege that Phong works as a security officer for a local casino.

28.  Plaintiffs quoted the rims price, and expressed some concern as to whether the front rims would work on Phong's vehicle because 20 inch rims were the standard for that model vehicle, and recommended a different rim than the one requested by Phong. Phong was also informed that should the rims not fit properly he would be charged a restocking fee.

29.  After numerous text messages, Phong ignored WCW's advice, and ordered the twenty-two (22) inch rims and paid a $200 deposit.  The total cost was $2,650.00, less tax.

30.  On July 13, 2013, Phong drove his employer's vehicle to WCW at about 5 pm.

31.  Plaintiffs installed the new rims, but the front rims were too large and would not allow the vehicle to operate properly without first being modified.

32.  Because of the rim difficulty, Omar Naveed (hereinafter "Omar"(advised Phong that he had three choices: [1] he could have the old rims and tires re-installed and cancel the order subject to a 25% re-stocking fee; [2] smaller tires could be installed on the 22 inch rims which would then allow the larger rims to function with modifications to his vehicle; or [3] purchase the 20 inch rims which were originally recommended.

---

illegally searched one of the phones, copying files for which there was no consent or warrant authorizing their duplication of viewing.

33.     Phong refused to accept any of the alternatives and refused to pay for the specially ordered rims or the re-stocking fee. He requested his keys and refused to pay anything to Plaintiffs.

34.     Phong insisted that his old rims and tires be re-installed and that he would not pay any additional money.  He also refused to allow WCW to modify the vehicle so that the 22 inch rims would be usable.

35.     This resulted in a business disagreement between Phong and Plaintiffs.

36.     Phong threatened to call the police if the Plaintiffs did not immediately return his vehicle.

37.     Omar advised Phong that WCW would not release the vehicle as they had the right to keep it until the fee was paid, or a court resolved the dispute. (Calif. Civ. Code § 3068.)[2]  Phong was also reminded of the recommendations made by WCW and Phong's refusal to heed the advice of WCW employees.

38.     Phong thereafter called the police twice on his cell phone and claimed that he was not being allowed to leave with his vehicle. The first call was at 10:50 pm.

During the first call the dispatch log (or CADMINE) indicated that Phong reported: "mgr and employees are demanding payment for rims that they ordered that do not fit rp's car, also ref to give rp back his original rims -- rp thinks fraud is going on,,,nfd. "

39.     The call ended at 10:52 pm, and Phong remained in the vicinity of WCW.

40.     At 11:37 Phong called the police again and the CADMINE shows the following conversation as being reported "Rp cb .. Saying subjs have his veh and refusing to give it to him .. Rp getting scared .. Saying that empl's have had friends come over . Now

---

[2]  **§ 3068.  Labor and material liens on vehicles (a)** Every person has a lien dependent upon possession for the compensation to which the person is legally entitled for making repairs or performing labor upon, and furnishing supplies or materials for, and for the storage, repair, or safekeeping of, and for the rental of parking space for, any vehicle of a type subject to registration under the Vehicle Code, subject to the limitations set forth in this chapter. The lien shall be deemed to arise at the time a written statement of charges for completed work or services is presented to the registered owner or 15 days after the work or services are completed, whichever occurs first. Upon completion of the work or services, the lienholder shall not dismantle, disengage, remove, or strip from the vehicle the parts used to complete the work or services.

abt 6 total other subjs . Mtf  Rp at the back of the shop, where his car is at. Other subjs also in the alley area . Rp can't walk out of the alley .  Mtf Rp advised pd enr at this time . Rp wanted to hu[rry], concerned for battery life on phn .. No longer ll .. Nfd."

41.     There is a WCW security videotape that shows Phong walking in and out of the alley just before the police arrived showing that no plaintiff or anyone else was threatening Phong with physical injury or false imprisonment, and showing that at no time was Phong prevented from leaving.

42.     In fact, Phong entered and left the retail store numerous times after the business dispute arose, and had the keys to his vehicle, a fact known to the police because Phong stated he had entered and exited on several occasions.

43.     At 11:39 pm, when Koenig and Nava arrived at WCW, they observed a person standing in the alley. That person was Phong.  Phong identified himself as the person who called the police, and the officers engaged in a lengthy conversation without any interference from Plaintiff or their family members.

44.     Phong admitted to the SJPD that he was never touched by Plaintiffs and that he was not threatened in any way to keep him from leaving. He further admitted to Defendants and later to Tran that he was told by Omar, "if you don't pay you don't get your car."  Phong explained that the reason he felt he could not leave was because WCW had his car.

45.     Phong also identified that he remained at the business well after the close of business hours and identified that certain individuals present had not been involved in the dispute.

46.     Tran was also told by Phong that Omar Naveed never said he could not leave the premises.  There is no indication that the Plaintiffs' ever threatened or detained or even directly communicated with Phong about his leaving.

47.     Shortly after the police arrived Defendants learnevideotapd that Omar was reported as saying to Phong "I'm going to fuck you up."

48.     Defendants were also told by Phong that Phong was unable to leave because the vehicle was on jacks and the driveway was blocked. Phong also stated that he was never told he could not leave.

49.     At the same time, Nava and Koenig observed a car with tinted windows located behind Phong in the alley.  This vehicle was not blocking Phong in any manner.

50.   That car did not have license plates on the rear bumper, and was occupied by Omar.

51.   Omar was asked for his registration and license by Koenig.

52.   Nava, without any reason other than he could not see into the car, opened the door and ordered Harroon Naveed (hereinafter "Harroon"), who was sitting in the front passenger seat, out of the car.

53.   At this point in time both Plaintiffs began to film the interaction between Omar, Harroon, and Defendants Nava and Koenig with their cell phones.

54.   Omar could not immediately find the registration, as the car was recently purchased, and the permanent license plate had not been received.

55.   Koenig then arrested Omar, and placed him in the back of a patrol car.

56.   Harroon asked why he was being ordered out of the car and indicated that he did not want to get out of the car. Nava then arrested Harroon for resisting, P.C. § 148. Harroon and Omar began yelling for their family members to take their cell phones out and video the police actions.

57.   Both Plaintiffs did in fact take their cell phones out and began to videotape the police activities. The videotapes do not contain any profanity on the part of Plaintiffs, or from the other arrested family members located around WCW. The cell phone video does show the arrest of Harroon and the arrest of Omar.

58.   As Plaintiffs' were videotaping, Defendants, including Nava, began to shine a light in Plaintiffs' cameras to prevent videotaping of the incident.

//

//

59.   Around this same time, Badar began to videotape the police activities and walked up the alley towards the front of the WCW building, at which point he turned to the left and moved about 20-30 feet down the sidewalk, away from the alley.

//

//

//

//

//

//



[3]

60.   Koenig then pursued after Badar, walked up to him without saying anything and tried to grab the cell phone from Badar while Badar was filming. Koenig grabbed Badar's left arm and, without any conversation or apparent communications, twisted Badar's arm behind his back. There was no resistance to the officers' putting Badar's arm behind his back. Immediately thereafter Koenig grabbed Badar's right arm, knocking the phone to the ground, as he twisted that arm behind Badar's back.

61.   With both arms behind his back, Koenig through the use of force, then swept Badar's feet out from under him causing him to crash into the concrete sidewalk.



---

[3] All images taken from surveillance videos outside West Coast Wheels, or cell phone videos.

62.   Just before Badar was thrown into the concrete, Defendant Wallace came up from behind Badar and grabbed Badar's left shoulder. Wallace added his weight and strength to that of Koenig and helped propel Badar to the ground, adding to the impact by pushing downwards.

63.   At no time before contact was made by Koenig, or before he was thrown to the concrete, was Badar resisting or fighting the officers.

64.   At no time before contact was made by Koenig, or before he was thrown to the concrete, did Koenig advise Badar that he was under arrest or to put his hands behind his back.

65.   At no time before Koenig made physical contact with Badar was Koenig being surrounded by others or threatened overtly or covertly, as he later reported in his police report.  In fact, at no time prior to leg sweeping Badar did Koenig have probable cause to arrest Plaintiff.

66.   At no time before Koenig made physical contact with Badar did Koenig repeatedly yell to other suspects to get back.

67.   After being thrown into the concrete Badar was handcuffed by Wallace and Koenig.

68.   During the arrest of Badar, Ahmad was standing 5 feet away videotaping the incident. Upon seeing the camera, Koenig ordered Ornelas to arrest Ahmad, despite the fact that he was following police orders and was doing nothing more than videotaping the incident.

69.   Defendant Ornelas approached Ahmad.  Ahmad was also using his cell phone to videotape the incident.  Ornelas walked up to Ahmad, who was standing still and at one point moving slightly to his right to get a better angle on the video.

70.   Ahmad, based on instructions from Ornelas, then moved to his left, away from the officers on the ground and away from Ornelas.  Ornelas threatened that if he did not back up that he would be arrested.  Ahmad followed orders and was then arrested for failing to obey commands and delaying an investigation by Koenig and Ornelas.

71.   When Koenig went to assist Ornelas he grabbed the handcuffed Ahmad and threw him forcefully, and without provocation, onto the top of a police car trunk. This use of force was not justified as all that Ahmad was doing was videotaping officers engaged in their duties in a public place. When Koenig threw him face first into the trunk of the police car he was handcuffed, with his hands behind his back. At no time did Ahmad resist, delay or obstruct Ornelas or resist or obstruct Koenig.

72.   Neither Badar Naveed nor Humza Ahmad were alleged to have threatened, assaulted, imprisoned or made physical contact with Phong, yet they were arrested for this very conduct.

73.   Koenig later claimed in his report that certain individuals were yelling while police interviewed Phong and that then he made the decision to arrest Badar and Ahmad. Plaintiffs were allegedly expressing their disagreement with Defendant's actions and that he could not hear, or understand Phong.

74.   Koenig's police report is false and inaccurate and does not conform to the facts contained in a videotape or audiotapes of the incident. Plaintiffs believe, and thereon allege, that the false report was created to cover-up Defendant Koenig's violation of Plaintiffs' civil rights and improper or illegal actions taken by the Defendants. Plaintiffs are further informed and thereon believe and allege that the false report was created to cover-up the civil rights and tort violations of other Defendants. The creation of a false report was malicious and intended to promote prosecution.

75.   Ornelas' police report is false and inaccurate and does not conform to the facts contained in a video tape of the incident. Plaintiffs believe, and thereon allege, that her false report was created to cover-up Defendant Ornelas' violation of Plaintiffs' civil rights and improper or illegal actions taken by the Defendants. Plaintiffs are further informed and thereon believe and allege that the false report was created to cover-up the civil rights and tort violations of the other Defendants. The creation of a false report was malicious and intended to promote prosecution.

76.   Wallace's police report is false and inaccurate and does not conform to the facts contained in a videotape of the incident. Plaintiffs believe, and thereon allege, that the false report was created to cover-up Defendant Wallace's violation of Plaintiffs' civil rights and improper or illegal actions taken by the Defendants. Plaintiffs are further informed and thereon believe and allege that the false report was created to cover-up the civil rights and tort violations of other Defendants. The creation of a false report was malicious and intended to promote prosecution.

77.   Nava's police report is false and inaccurate and does not conform to the facts contained in a video tape of the incident. Plaintiffs believe, and thereon allege, that the false report was created to cover-up Defendant Nava's violation of Plaintiffs' civil rights and improper or illegal actions taken by the Defendants. Plaintiffs are further informed and thereon believe and allege that the false report was created to cover-up the civil rights and tort violations of the other Defendants. The creation of a false report was malicious and intended to promote prosecution.

78.   The named defendants each have police reports that mirror each other's, but are shown to be false by videotape and audiotape recordings. Plaintiff is informed and believes and thereon alleges that the named defendants, met, conversed, and determined to create reports to cover up their improper detention, arrest, search and seizures of the Plaintiffs and their property.

79.   The named Defendants, and as approved by Tran, searched and seized the Plaintiff property and place of business without a warrant.  They removed items for the business and deprived the Plaintiff of the use of the items and of their value. These actions are shown on internal video footage from the business which shows the officers entering the property, removing items, and searching the entire business including areas like cabinets.  Plaintiffs are informed and believe and thereon allege that Defendants gave that property to Phong and that Phong then left San Jose without paying for the labor or special order parts that were expended and purchased for his benefit by the Plaintiffs.

80.   Tran's police report is false and inaccurate and does not conform to the facts contained in a videotape of the incident. Tran fails to report that the officers under his control conducted a warrantless search of WCW and removed property belonging to WCW and did so without payment or compensation to WCW. Plaintiffs believe, and thereon allege, that the false report was created to cover-up Defendant Tran's violation of Plaintiffs' civil rights and improper or illegal actions taken by the Defendants. Plaintiffs are further informed and thereon believe and allege that the false report was created to cover-up the civil rights and tort violations of the other Defendants.

81.   Tran and Defendants are each alleged to have written a police report that sets forth their ignores their warrantless search of WCW and their removal of property that WCW had a right to.

82.   Koenig and Ornelas seized the cell phones of the Plaintiffs. Plaintiffs demanded return of their property, property that was not used in the commission of any crime. Said property was not returned and was and is in the possession of the SJPD.

83.   At no time did the Defendants seek a warrant to search the cell phones or to retain the phones.

84.   Plaintiffs agreed to have their cell phones viewed on that evening subject to the limitation that the searches only consist of the last video file on each cell phone.

85.   Badar asserts that he made a video recording of the incident that was of more than 30 seconds duration. A videotape of the incident taken from a security camera supports his assertions as to the length of the video he took.

86.   The video provided by the SJPD from Badar's phone is less than 4 seconds in duration and only shows the last few seconds when his phone is knocked to the ground. At no time can anyone be heard on the video saying "you are under arrest" or "put your hands behind your back" or "stop resisting".   In fact Koenig's voice is not on the video at all.

87. Plaintiff is informed and believes and thereon alleges that Defendants knowingly and intentionally erased and destroyed substantial sections of the video file on Badar's phone.

88. After the arrest of the Plaintiffs, the named Defendants, and others entered the private property of WCW, after business hours and without a search warrant ,or any exception to the warrant requirement,  or consent and searched the entire premises.

89. During the search these Defendants seized property belonging to the Plaintiffs and removed that property.   Defendants forced one of the employees of WCW to remove the rims that Phong had ordered.  Phong also directed that the officers remove sensors from the wheels and rims.

90. Defendants deprived the Plaintiffs of their rights under Civil Code § 3068 through the use of force, threat, intimidation and coercion violated Plaintiffs'' constitutional rights when they took property by force and threat of arrest, and in fact arrested Plaintiffs, and gave that property to Phong.

91. Defendants deprived the Plaintiffs of their rights under the First, and  Fourth Amendments of the United States Constitution and § 1, and 13 of the California Constitution, Civil Code § 3068, through the use of force, threat, intimidation and coercion when: the did submitted false police reports in an attempt to conceal their illegal and improper actions; when they arrest the Plaintiffs' for the Plaintiffs' lawful speech after allegedly telling Plaintiffs that they had to be silent; when they seized the Plaintiffs' cell phones without a warrant or exception to the warrant requirements; when they arrested Plaintiffs for videotaping the police in a public place; when they arrested Plaintiffs without probable cause for the felonies of threatening a witness and false imprisonment when they knew that the elements of those offenses were not present; when they destroyed or erased video recordings that would have shown the Defendants violations of Plaintiffs' civil rights, and when they used force against Plaintiffs which was unnecessary and excessive under the circumstances based on their frustration that their actions were being videotaped and questioned.

92.   At no time did these Defendants record or track the property that they seized from Defendants business, or how they disposed of that property.

93.   Plaintiffs are informed and believe and thereon allege that the Defendants in fact gave that property to Phong, and were able to do so by the use of threat, intimidation and coercion when they arrested the Plaintiffs and kept them from knowing what the Defendants were doing and when the Defendants deprived the Plaintiffs of their rights to that property while handcuffed and prevented from securing their property and business. Plaintiffs allege this was done in retaliation for Plaintiffs' speech and voiced displeasure.

### First Cause of Action
Violation of 1st Amendment Right - Freedom of Speech, Retaliation
42 USC § 1983
Against Koenig, Nava, and Ornelas

94.    Plaintiff incorporates ¶1 through ¶ 93 as if fully set forth herein.

95.    All defendants in this cause of action acted under color of law as San Jose Police Officers and acted under the authority of the San Jose Police Department.

96.    Defendants in this cause of action took enforcement action against the Plaintiffs based on the plaintiffs' expression of dissatisfaction with the defendants' conduct, and further expressed that displeasure by videotaping the defendants on a public street while Defendants were engaged in their official conduct. It is well accepted that this type of action is a form of expressive speech and is protected by the First Amendment to the United States Constitution.

97.    Defendants threatened the Plaintiffs with arrest if they did not cease their constitutionally protected activities, and did in fact arrest Plaintiffs.  Defendants' actions did and would chill a person from videotaping the police in the future if they believe that videotaping police activity in public could result in their arrest, seizure of property, and the search of a private business.

98.    Defendants' statements in their reports support Plaintiffs' assertion that they were arrested for their speech.  Only after arrests were made did Defendants change the basis for the arrests to a variety of other statutes, each of which was later dismissed.

99.     As a direct and proximate result these actions Plaintiffs were damaged in an amount to be proven at trial.

**Second Cause of Action**
Violation of Plaintiffs 4th Amendment Rights and California Constitution
False Arrest/Unlawful Search of Person/Excessive Force
42 USC § 1983
Against Koenig, Ornelas, Wallace, and Tran

100.     Plaintiff incorporates ¶1 through ¶ 99 as if fully set forth herein.

101.     All defendants in this cause of action acted under color of law as San Jose Police Officers and acted under the authority of the San Jose Police Department.

102.     Defendants in this cause of action took enforcement action against the Plaintiffs based on the plaintiffs' group expression of dissatisfaction with the defendants' conduct, when the Plaintiffs walked towards the officers and expressed their dissatisfaction. The Defendant ordered the plaintiff to stop and they stopped. Plaintiffs were arrested, in part for being in a public alley next to their place of business.

103.     Defendants threatened the Plaintiffs with arrest if they did not cease their constitutionally protected activities, to vocally protest police activity, and did in fact arrest Plaintiffs.

104.     The defendants did not have a legal right to arrest the Plaintiffs for expressing their opinion of police actions or for videotaping the actions of officers, and as such lacked probable cause to arrest. Defendant Koenig admits that when he ordered Plaintiffs to halt that they did.

105.     Ornelas arrested Ahmad for videotaping Koenig arresting Badar. The videotape shows that Ahmad follows her instructions and does not resist her. Ornelas had no probable cause to arrest Ahmad.

106.     At no time were Defendants provided information that would corroborate that Plaintiffs violated any statutes. In fact, statements made by Phong and each Plaintiff, and videotapes from the business, dissipated any probable cause that allegedly existed

since Phong was able to leave, did not feel threatened as to Plaintiffs, and given that this involved a simple business dispute.

107.   Defendant Koenig, Wallace and Ornelas used excess force when they arrested Plaintiffs. Koenig swept the feet from under Badar, causing him to fall to the concrete face first. Badar was not struggling or resisting Koenig. Wallace, added his strength and weight to forced Badar to hit the concrete with more force than would have occurred without his actions and then did force his knee into Badar neck and head, driving them into the concrete even though Badar was not resisting or struggling. Ornelas handcuffed Ahmad and participated in the securing Ahmad while Koenig threw Plaintiff's face into the trunk of an SJPD cruiser.

108.   Said force was unnecessary and damaged Plaintiff Badar and Ahmad.

109.   Koenig and Ornelas handcuffed Ahmad and then threw him, face first, into the top of a police car trunk. This force was unnecessary as Ahmad was handcuffed with his hands behind his back, and was not struggling or otherwise resisting.

110.   Defendant Tran after speaking to Plaintiffs was provided information that Plaintiffs in no way falsely imprisoned Phong. Tran was also provided information that corroborated Plaintiffs' version of events through cell phone videos.  Tran was the supervisor with authority over all other Defendants sued herein.

111.   Defendant Tran ordered, directed, and encouraged his subordinates to arrest Plaintiffs' despite certain evidence demonstrating that no criminal activity had taken place, and the dissipation of probable cause.

112.   As a direct and proximate result the Plaintiffs were injured by having their freedom deprived and taken away, and being charged with serious crimes for which there was no evidence that they had committed.

113.   Plaintiffs were damaged in an amount to be proven at trial.

**Third Cause of Action**
Violation of Plaintiffs 4th Amendment Rights
Illegal Seizure of Property – Cell Phone
As Protected by 42 USC § 1983
Against Koenig, Ornelas, Tran

114.    Plaintiff incorporates ¶1 through ¶ 113 as if fully set forth herein.

115.    All defendants in this cause of action acted under color of law as San Jose Police Officers and acted under the authority of the San Jose Police Department.

116.    Defendants in this cause of action did, without a warrant or other exigent circumstance, seize and keep Plaintiff private property, including cell phones which Plaintiffs lawfully possess and had physical dominion over.

117.    Minutes before the seizure Defendants threatened the Plaintiffs with arrest if they did not cease their constitutionally protected activities, to protest police activity.

118.    Defendants arrested Plaintiffs after their expression of dissatisfaction, including the videotaping of the officers as well as their presence in the alley.    On information and belief Plaintiffs assert their arrest was the result of protected activity and not probable cause.

119.    The defendants did not have a legal right to seize the Plaintiffs property as the property was not used in a crime, not the fruit of a crime, or evidence that was likely to be imminently destroyed.

120.    As a direct and proximate result the plaintiffs lost the use of their property, which affected their business with WCW, and were denied the benefits of their constitutional right to not have property seized without a warrant. The Defendants used force, coercion and intimidation to seize the cell phones.

121.    Plaintiffs were damaged in an amount to be proven at trial.

**Fourth Cause of Action**
Violation of Plaintiffs 4th Amendment Rights
Illegal Search and Seizure of Property At WCW
As Protected by 42 USC § 1983
All Named Defendants

122.    Plaintiff incorporates ¶1 through ¶ 121 as if fully set forth herein.

123.    All defendants in this cause of action acted under color of law as San Jose Police Officers and acted under the authority of the San Jose Police Department.

124.    Defendants in this cause of action did, without a warrant or other exigent circumstance, search the closed business property and buildings of WCW.  During the search the defendants seized and kept property which Plaintiffs lawfully possessed and had physical dominion over.  Defendants further removed property from Phong's vehicle, replaced other parts on Phong's vehicle, and then allowed Phong's vehicle to be removed from WCW.

125.    Defendants, at the direction of Tran, and individually, determined to search WCW, seized personal property from Plaintiffs' business, removed property from WCW control, forced WCW employees to service Phong's vehicle, searched places of the business that would not harbor an individual, and without any necessity or other warrant exception.

126.    Minutes before the seizure Defendants arrested the Plaintiffs, thus preventing them from objecting to the search and seizure, as they did not know of the police actions from their locations in police cars.

127.    Defendants made no report of their search and seizure at WCW in their police reports. Plaintiffs are informed and believe that the lack of reports are the result of the defendants attempt conceal their illegal search.  The search was recorded on WCW security cameras.

128.    The defendants did not have a legal right to seize the Plaintiffs property as the property was not used in a crime, not the fruit of a crime, or evidence that was likely to be imminently destroyed.

129.    As a direct and proximate result the plaintiffs lost the use of their property and were denied the benefits of their constitutional right to not have property seized without a warrant. The Defendants used force, coercion and intimidation to seize the cell phones.

130.    Plaintiffs were damaged in an amount to be proven at trial.

**Fifth Cause of Action**
Battery By A Police Officer
Against Koenig, Ornelas, and Wallace

131.   Plaintiffs incorporate ¶1 through ¶ 130 as if fully set forth herein.

132.   Plaintiffs did not consent to be touched by Koenig, Wallace, or Ornelas.

133.   Plaintiff Ahmad did not consent to be touched by Ornelas or Koenig.

134.   Plaintiff Badar did not consent to be touched by Wallace or Koenig.

135.   Wallace, Koenig and Ornelas did make offensive contact with the Plaintiffs, and Plaintiffs were harmed by the contact which a reasonable person would find objectionable and offensive.

136.   The force used to make contact was excessive and unreasonable and did injure the plaintiffs in an amount to be proven at trial.

**Sixth Cause of Action**
False Arrest
Against Koenig and Ornelas

137.   Plaintiff incorporates ¶1 through ¶ 136 as if fully set forth herein.

138.   Defendants in this cause of action took enforcement action against the Plaintiffs which was unjustified and not supported by probable cause.

139.   At no time did Defendants have a warrant for the arrest of Plaintiffs, or have any facts or information that would constituted probable cause that Plaintiffs had committed or were about to commit a crime.

140.   Defendants admittedly arrested the Plaintiffs for their speech and gathering in the alley.

141.   The defendants did not have a legal right to arrest the Plaintiffs for expressing their opinion of police actions or for videotaping the actions of officers. Defendants lacked any probable cause to arrest.

142.   Defendants intentionally and unlawfully exercised force to restrain Plaintiffs' liberty and freedom of movement. Defendants and each of them assisted in ensuring the arrest of Plaintiffs by means of force.

143.     As a direct and proximate result the Plaintiffs were injured by having their freedom deprived and taken away, and being charged with serious crimes for which there was no evidence that they had committed.

144.    The Defendants actions were a substantial factor in causing the harm.

145.     Plaintiffs were damaged in an amount to be proven at trial.

**Seventh Cause of Action**
Bane Act – Civil Code § 52.1
Against Koenig, Nava, Ornelas, Tran, Wallace, City of San Jose

146.    Plaintiff incorporates ¶1 through ¶ 145 as if fully set forth herein.

147.    Defendants in this cause of action took action against Plaintiffs and violated the constitutional rights of Plaintiffs, alleged hereinabove, or attempted to violate their constitutional right by threat, intimidation, and/or coercion.

148.    As applied to allegations above, Plaintiffs had the right to be free to express their displeasure without fear of or retribution for their speech; to be free from unreasonable searches and seizures of their persons and property; the right t be free from excessive and unreasonable force during their initial detention and arrest; the right to the free enjoyment of their lives and liberties, to possess and protect property, and to pursue and protect their happiness and privacy; the right to be free from unlawful restraint, harm, and person insult.

149.    These rights are protected by the First and Fourth Amendment to the United States Constitution, Article 1, Section 1 and 13 of the California Constitution, and California Civil Code section 43.

150.    Defendants interfered with or attempted to interfere with Plaintiffs rights as alleged herein by the acts described above, including, but not limited to: retaliating against Plaintiffs for videotaping police action and voicing displeasure at the police action; using unnecessary force to effectuate the arrests of Plaintiffs; arresting and seizing Plaintiffs' persons without probable cause or any other lawful justification; refusing to let Plaintiffs to leave once information became available showing that arrest of Plaintiffs would be unlawful; seizing Plaintiffs' property and seizing their business; searching

Plaintiffs' person and property without a warrant or other warrant exception  or other lawful purpose; forcing Plaintiffs' employees to perform work on vehicles and property which was not within Defendants' control; and damaging property within Plaintiffs' business or place of business by the actions alleged herein.

151.    As a direct and proximate result the Plaintiffs were injured by having their freedom deprived and taken away, and being charged with serious crimes for which there was no evidence that they had committed.

152.    The Defendants actions were a substantial factor in causing the harm.

153.    Plaintiffs were damaged in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment from the Defendants for:

1. Actual damages suffered in an amount to be determined by the evidence presented at trial, but in no event less than the jurisdictional minimum of this court and treble damages of at least the $4,000 minimum, as established in California Civil Code § 52 and 52.1.

2. Consequential damages, including but not limited to attorney's fees and costs incurred to pursue this litigation. Statutory penalties under California Civil Code §52 pursuant to §52.1 in the amount set forth in the statute for each violation against each Defendant who was involved in violating the Plaintiffs' Constitutional or Statutory rights.

3. Punitive damages in an amount to be determined by the evidence presented at trial, or nominal damages in the amount of $1.00.

4. Costs of suit and an award of attorney's fees pursuant to California Civil Code §§52 and 52.1,  and 42 USC 1988 which are intended to protect and benefit the public against violations of their civil rights.

5. Such other and further relief as this Court may deem appropriate under the circumstances.

//

//

1     January 27, 2016                      Bustamante & Gagliasso PC

2

3                                  _____/s/_____

4                                  Steven M. Berki, Co-counsel for Plaintiffs

5

6     January 27, 2016                 The Law Firm of *Kallis* & Associates p.c.

7

8                                  _____/s/_____

                                 M. Jeffery Kallis, Co-counsel for Plaintiffs